No. 733 August 5, 2026 7

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TROY KEVIN HUGGETT,
*Defendant-Appellant.*

Washington County Circuit Court
C160168CR; A183672

Erik M. Buchér, Judge.

Submitted December 8, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kristin A. Carveth, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

Defendant appeals a judgment of conviction for second-degree assault, ORS 163.175. The conviction arises from an incident in 2015 in which the complainant, J, suffered a broken jaw and other injuries.[1] Defendant raises five assignments of error that reduce to two issues. First, he argues that the trial court erred in excluding J's five prior felony convictions as impeachment evidence. Second, he contends that the trial court plainly erred in not intervening *sua sponte* when the state "introduced evidence of defendant's exercise of his right to remain silent" and commented on the same in closing arguments. As explained below, we affirm.

## FACTS

In 2015, defendant and J, who were both unhoused, got into an altercation during which defendant threw J's bicycle into the river, then grabbed J by the jacket collar and told J to stay away from him. A week later, J was assaulted and seriously injured. Defendant was arrested and charged with the assault. At trial, both J and defendant testified. Defendant admitted to the bicycle incident but denied the assault.

## IMPEACHMENT EVIDENCE

The complainant, J, had prior convictions that defendant wanted to use to impeach his credibility. The trial court allowed use of J's two prior misdemeanor theft convictions, but it excluded his five prior felony convictions for possession of a controlled substance, second-degree escape, and assault of a public safety officer, on the ground that their probative value was substantially outweighed by the risk of unfair prejudice under OEC 403. The court noted that it would have allowed those convictions into evidence but for the OEC 403 balancing, which was required at the time under *State v. Aranda*, 319 Or App 178, 509 P3d 152 (2022), *rev'd*, 372 Or 363, 550 P3d 363 (2024), a decision that has since been reversed. On appeal, in light of the reversal

---

[1] Defendant was first tried in 2016, but his convictions were vacated in 2023 because they were based on nonunanimous jury verdicts. Defendant was retried in 2024.

of *Aranda*, the state concedes that it was error to exclude the felony convictions as impeachment evidence. The state nonetheless urges us to affirm, arguing that the error was harmless.

We accept the state's concession of error as well taken. As for harmlessness, an evidentiary error is harmless if there is "little likelihood that the particular error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Harmless error is not a basis for reversal. *Id*. at 28. "With respect to the erroneous exclusion of impeachment evidence, a trial court's error is harmless if either: (1) despite the exclusion, the factfinder nonetheless had an adequate opportunity to assess the witness's credibility; or (2) the witness's credibility was not important to the outcome of the trial." *State v. Jones*, 274 Or App 723, 728, 362 P3d 899 (2015) (internal quotation marks and brackets omitted).

Having reviewed the record and considered the parties' arguments, we agree with the state that the error was harmless. There is no doubt that J's credibility was important. The trial was essentially a credibility contest between J and defendant, because no one else present for the incident testified. However, the jury had an adequate opportunity to assess J's credibility notwithstanding the error, such that there is little likelihood that the error affected the verdict. The jury already knew that J had twice been convicted of theft, which is a crime of dishonesty, *State v. Gallant*, 307 Or 152, 157, 764 P2d 920 (1988), and the trial court expressly instructed the jury that it could consider those convictions as bearing on J's credibility. Additionally, the jury heard J admit to changing his story about the assault multiple times, heard J claim to have lied to health care providers and the police, and heard J admit to having previously lied under oath. In closing argument, defendant characterized J as a "lying thief." On this record, and for those reasons, we conclude that the jury had an "adequate opportunity" to assess J's credibility, *Jones*, 274 Or App at 728, despite the erroneous exclusion of his prior felony convictions. We therefore reject the first, second, and third assignments of error.

## RIGHT AGAINST SELF-INCRIMINATION

Defendant's next two claims of error are unpreserved, so he requests plain-error review. "Generally, an issue not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). However, we have discretion to correct a "plain" error. ORAP 5.45(1). An error is "plain" when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without our having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). Where a plain error occurred and was not harmless, we must decide whether to exercise our discretion to correct it. *State v. Ortiz*, 372 Or 658, 672, 554 P3d 796 (2024).

While testifying at trial, defendant described an incident about a week before the charged assault in which defendant threw J's bicycle in the river, then grabbed J by the jacket collar and told J to stay away from him. On cross-examination, the prosecutor pressed defendant as to why, when arrested for the charged assault and interviewed by police, he mentioned everything about the prior incident except the collar-grabbing. Defendant responded that "[t]hey didn't ask" and that he "didn't even think about" it. Later, returning to the topic, the prosecutor tried to get defendant to admit that he did not tell the police about grabbing J's collar because he was "worried" and did not want to tell them that he "put hands on [J] a week prior." Defendant insisted that that was not true and that it just did not occur to him to mention it. The prosecutor continued to press until defendant finally agreed that he did not have an explanation for not mentioning the collar grabbing to the police, at which point the prosecutor moved on.

In closing argument, the prosecutor referenced that line of testimony three separate times. In principal closing, she argued that defendant's explanation for not mentioning the collar-grabbing to the police didn't "make any sense" because "[o]f course it's relevant" when he was being questioned about an assault on J; suggested that defendant mentioned the collar-grabbing in his trial testimony only because he heard another witness testify about it; and suggested

that the real reason that defendant did not "bring up [to the police] that [he] assaulted [J] a week prior, or almost assaulted [J] a week prior," was "because he didn't want to get into trouble for it." A short while later, still in principal closing, the prosecutor reminded the jury of defendant's inability to explain why he did not tell the police about grabbing J's collar and asked, "What does that mean to you?" She argued that defendant knew that telling the police that he physically grabbed J a week earlier "wouldn't go well for him" but that "of course he can't say that to you in court" so he says he doesn't have an explanation, which is "not a good answer when you're evaluating a witness's credibility."

Then, in rebuttal closing, the prosecutor addressed it yet again, arguing:

> "[T]he defense attorney said something real interesting about how—you know, trying to get over the fact that his client wasn't forthcoming about, you know, grabbing [J] by the collar, all that whole thing we've already talked about, and he said people are generally defensive and don't want to talk about bad things they did. Right. Exactly. And that's exactly what the defendant did. He didn't want to tell the police about the bad things he had done for the incident involving the bike, throwing it in the creek, and the incident where he assaulted the victim because he didn't want to get in trouble for it. Yes, I will agree with the defense attorney on that one."

Defendant did not object at trial to the aforementioned line of questioning or to the prosecutor's statements in closing argument, but he now claims plain error and asks us to exercise our discretion to reverse his conviction on that basis. Specifically, defendant argues that the prosecutor's questions and arguments amounted to improper comments on his right to remain silent when questioned by police. The state responds that defendant willingly spoke to the police and never invoked his right to remain silent—or, more precisely, his right against compelled self-incrimination under Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution—and that the prosecutor therefore was necessarily not commenting on the exercise of a constitutional right. At a minimum, the state argues, it is not obvious or beyond reasonable

dispute that the prosecutor's statements were improper. *See State v. Perez*, 373 Or 591, 607, 568 P3d 940 (2025) (a statement in argument is obviously improper if its only possible interpretation makes it improper, whereas it is not obviously improper if it is susceptible to more than one interpretation, at least one of which is not impermissible); *State v. Chitwood*, 370 Or 305, 312, 518 P3d 903 (2022) (on plain-error review, the prosecutor's statement must have been obviously improper).

When a person is in custody or compelling circumstances, their rights against compelled self-incrimination attach. *State v. Moore*, 352 Or App 15, 24, ___ P3d ___ (2026). At that point, the police must give *Miranda* warnings. *Id*. at 25. If the person invokes or refuses to speak, that cannot be used against them at trial, nor may the prosecutor draw attention to their exercise of a constitutional right. *Id*. at 27. If the person waives their rights and speaks to the police, however, their voluntary statements may be used against them. *Id*. at 25-26. Moreover, differences between what the person tells the police and what they later say or bring into evidence at trial are a proper subject for questioning and commentary. *Id.* at 27-28.

In this case, defendant was in custody, and it appears to be uncontested that he received *Miranda* warnings, validly waived his rights, and voluntarily spoke with the police. Defendant argues that the state cannot "use a defendant's post-*Miranda* silence as evidence of guilt," but this is not a case in which defendant was silent. He voluntarily spoke to the police after his arrest, including about the bicycle incident that occurred between him and J a week before the assault, and he apparently relayed everything that occurred during the bicycle incident except for one detail, the collar-grabbing.

In *Pickett*, the defendant voluntarily spoke to the police after her arrest for shoplifting, and "[t]here simply was no *silence* as to why she left the store without paying for the sweater." *State v. Pickett*, 37 Or App 239, 243, 586 P2d 824 (1978) (emphasis in original). The prosecutor was therefore free to point out inconsistencies between the defendant's trial testimony and what she told the police. *Id.* In *Attebery*,

the defendant voluntarily spoke to the police after his arrest and, at trial, elicited evidence that he told the police he had an alibi for the night in question. *State v. Attebery*, 39 Or App 141, 146, 591 P2d 409, *rev den*, 286 Or 449 (1979). The prosecutor then elicited evidence that the defendant had not provided the police with any details regarding his claimed alibi and suggested in closing argument that the alibi was concocted. *Id*. The prosecutor did not act improperly in doing so, as it was the defendant who injected the alibi issue, and *Attebery* was a "case of talking" rather than "a case of refusal to talk." *Id.* at 147.

        This too is a case of talking rather than refusal to talk. Defendant voluntarily spoke to the police about the bicycle incident after he was arrested for assault. His omission of one detail, the collar-grabbing, is not "silence" for constitutional purposes. *Moore*, 352 Or App at 27-28; *see also Anderson v. Charles*, 447 US 404, 408, 100 S Ct 2180, 65 L Ed 2d 222 (1980) (when a defendant voluntarily speaks to the police after receiving *Miranda* warnings, "[a]s to the subject matter of his statements, the defendant has not remained silent at all"). Indeed, defendant himself was adamant that he was not exercising a constitutional right when he failed to mention the collar-grabbing to the police. He testified that the only reason that he did not mention it was because it did not occur to him. Defense counsel reiterated that point in closing argument, stating that defendant chose to be upfront with the police rather than exercise his right to silence, such that that right was not at issue in this case:

> "A person who is being considered a suspect for a crime, number one, has the right to remain silent. Now, frankly, we don't have that in this case because my client chose to talk about what happened. He was upfront. He was saying what was going on.

> "But, you know, if the police officer had said, 'Oh, so you threw the bike over there, right; now, isn't it true that you also grabbed him by [the] collar,' my client would have said, 'Yeah, I did.'"

Defense counsel then proceeded to argue that defendant grabbing J by the collar and walking away was actually

helpful to the defense because it "firmly support[ed]" defendant's testimony that the bicycle incident "was it" and nothing further happened.

Because defendant voluntarily spoke to the police about the bicycle incident, it was not improper for the prosecutor to point out differences between what he told the police about it and what he testified at trial. Certainly, any error is not plain.

Affirmed.